Exhibit O-1: Finding of No Significant Impact (Feb. 15, 2022); Final Environmental Assessment (Feb. 15, 2022); Final EA Appendix A (Project Area Maps); Final EA Appendix B (Site Photos)



United States
Department of
Agriculture

Farm
Production
and
Conservation

Farm
Service
Agency

Tennessee Farm Service Agency
579 U.S. Courthouse
801 Broadway
Nashville, Tennessee 37203-3883
Voice: (615) 277-2660 Fax: (855) 494-7763

**United States Department of Agriculture**
**Farm Service Agency**
**FINDING OF NO SIGNIFICANT IMPACT (FONSI)**
**for**
**Implementation of Proposed Boiler Poultry Barn**
**Construction in Henderson County, TN at Tax Map 12**
**Parcels 13.00 and 13.01**

The United States Department of Agriculture, Farm Service Agency (FSA) has prepared a Final Environmental Assessment (EA) to evaluate the environmental consequences associated with implementing the proposed construction of two poultry units consisting of eight 54' by 600' broiler houses for a total of sixteen broiler houses and related infrastructure in Henderson County, Tennessee. The proposed location is currently vacant.

The purpose of the proposed broiler poultry barn construction is to implement USDA, FSA Farm Loan Programs, to make available economic opportunity to help rural America thrive, and to promote agriculture production that better nourishes Americans and help feed others throughout the world. FSA is tasked with this mission asprovided for by the Food and Security Act of 1985 as amended, the Consolidated Farm and Rural Development Act as amended, and related implementing regulations found in 7 CFR Parts 762 and 764.

## Proposed Action

The Proposed Action would implement construction of two poultry units consisting of eight 54' by 600' broiler poultry barns for a total of sixteen broiler houses and related infrastructure that would be capable of housing a maximum total of 312,000 broilers. It would also include site preparation, pads, access road construction, utilities, and other related infrastructure. The project would be located at Judge McClough Road in Henderson County, Tennessee.

## Alternatives

Alternatives analyzed in the Environmental Assessment include completing the action as proposed, selecting an alternative location for the proposal, and not completing the proposed action. The proposed action was selected over the other alternatives because an alternative location proved not feasible as the project would take place on property owned by the applicants. The no action alternative, meaning that the proposed project would not occur was not selected as potential impacts to the environment and surrounding areas were found to be minimal or would not adversely affect protected resources as evaluated in the Final Environmental Assessment.

## Mitigation Measures

The applicants have obtained the necessary plans and permits required within the regulations of the Tennessee Department of Environment and Conservation. In Tennessee, the Tennessee Department of Environment and Conservation (TDEC) has the authority to enforce provisions of the Clean Water Act that are protective of water quality and to issue permits that are protective of water quality standards. This authority is delegated to TDEC by the Environmental Protection Agency. The TDEC Division of Water Resources issues Stormwater National Pollutant Discharge Elimination System (NPDES) Permits to protect surface waters from contamination from runoff associated with construction. Coverage under the permit is required for construction that causes ground disturbance exceeding 1 acre. The applicants have obtained the required NPDES permit. The applicants also supplied a Storm Water Pollution

Prevention Plan (SWPPP) developed by William P. Smith, CPESC, L.I. Smith and Associates, Inc. SWPPPs are documents that describe construction activities to prevent stormwater contamination, control sedimentation and erosion, to prevent significant harm to surface waters and comply with the requirements of the Clean Water Act. Additionally, the applicants have a Nutrient Management Plan (NMP) in place. Per the NMP received for the proposed facility, the operation plans to export all litter off-site to generate income for the operation as local farmers would use the litter as fertilizer, remaining in compliance and is permissible with TDEC, the responsible regulatory agency.

## Environmental Impacts of the Proposed Action and Why Not Significant

The applicants have obtained the required permits and will not create significant negative impacts to the environment when plans and permits are adhered to.

## Public Feedback and FSA Responses

FSA contacted the following agencies and individuals for the Draft Environmental Assessment. Public comments and responses to FSA from the following organizations are summarized in the Final Environmental Assessment: The TN Historical Commission, Coushatta Tribe of Louisiana, Chickasaw Nation, Tennessee US Fish & Wildlife Service, Tennessee Wildlife Resources Agency, and Tennessee Department of Environment and Conservation.

## Supporting Documents

As noted in the Final Environmental Assessment, the applicants have obtained the required plans and permits to operate a large CAFO poultry operation in Henderson County, TN. One hundred fifty-four comments were received from the public during publication of the Notice of Availability, and they are included in the Final Environmental Assessment.

## Determination

According to the National Environmental Policy Act and FSA's environmental regulations at 7 CFR Part 799 implementing the regulations of the Council on Environmental Quality, 40 CFR Parts 1500-1508, I find that the Proposed Action is not a major Federal action significantly affecting the quality of the human environment. Therefore, no environmental impact statement will be prepared.

## State Environmental Coordinator:

*Lisa A. Lien*
Digitally signed by LISA LIEN
DN: c=US, o=U.S. Government,
ou=Department of Agriculture, cn=LISA LIEN,
0.9.2342.19200300.100.1.1=12001003314386
Date: 2022.02.15 09:52:13 -06'00'
Adobe Acrobat version: 2021.011.20039

02/15/2022

**Signature**                                              **Date**

Lisa A. Lien
Farm Loan Specialist

## Designated Project Approval Official for the Proposed Action:

*Michael A. Boyd*
Digitally signed by MICHAEL BOYD
DN: c=US, o=U.S. Department
of Agriculture, cn=MICHAEL BOYD,
0.9.2342.19200300.100.1.1=12001000979861
Date: 2022.02.15 10:53:46 -06'00'
Adobe Acrobat version: 2021.011.20039

02/15/2022

**Signature**                                              **Date**

Michael A. Boyd
Farm Loan Specialist

# U.S. DEPARTMENT OF AGRICULTURE
## Farm Service Agency

## FINAL ENVIRONMENTAL ASSESSMENT

### *Henderson County, TN*

**Prepared By**
**Jon Travis, USDA, Farm Service Agency**
**Farm Loan Officer**

*February 15, 2022*

# COVER SHEET

| | |
|---|---|
| **Proposed Action:** | The Farm Service Agency of the United States Department of Agriculture proposes to provide Farm Loan Program assistance to finance the construction of two poultry units consisting of (8) 54' x 600' broiler houses per unit. An estimated 25.5 and 18.9 acres would be disturbed during the construction of these two units, which includes pads for the houses, generator shed, gravel load out pad, and a small access road to each site. The projects would be located on two separate parcels of real estate identified as Henderson County Tax Map 12 Parcel 13.00 and Map 12 Parcel 13.01, respectively. |
| **Type of Document:** | This is a site-specific Environmental Assessment |
| **Lead Agency:** | United States Department of Agriculture (USDA) Farm Service Agency (FSA) |
| **Cooperating Agencies:** | None |
| **Further Information:** | Jon Travis, USDA-Farm Service Agency, 80-A South Broad Street, Lexington, TN 38351 |
| **Comments:** | This Environmental Assessment (EA) was prepared in accordance with USDA FSA National Environmental Policy Act (NEPA) implementing procedures found in 7 CFR 799, as well as the NEPA of 1969, Public Law 91-140, 42 US Code 4321-4347, as amended.<br><br>A copy of the Final EA and related material will be available at USDA, Farm Service Agency, 80-A South Broad Street, Lexington, TN 38351. |

# TABLE OF CONTENTS

1. Introduction .................................................................................................................................. 7

    **1.1** Background ........................................................................................................................ 7

    **1.2** Purpose and Need for the Proposed Action .................................................................. 7

    **1.3** Decision To Be Made ..................................................................................................... 7

    **1.4** Regulatory Compliance ................................................................................................. 8

    **1.5** Public Involvement and Consultation ........................................................................... 8

        1.5.1 Internal Scoping ...................................................................................................... 8

        1.5.2 External Scoping ..................................................................................................... 8

        1.5.3 Public Involvement ................................................................................................. 9

2. Description of Proposed Action and Alternatives .................................................................. 10

    **2.1** Alternative A - Proposed Action ................................................................................. 10

    **2.2** Alternative B – No Action Alternative ........................................................................ 11

    **2.3** Alternative C ................................................................................................................ 11

    **2.4** Alternatives Considered but Eliminated from Analysis ............................................... 11

3. Affected Environment and Impacts ........................................................................................ 12

    **3.1** Resources Eliminated from Detailed Analysis ............................................................ 12

    **3.2** Resources Considered with Detailed Analysis ............................................................ 14

        3.2.1 Wildlife and Habitat ............................................................................................. 14

        3.2.2 Cultural Resources ................................................................................................ 15

        3.2.3 Water Quality ........................................................................................................ 16

        3.2.4 Air Quality ............................................................................................................. 17

        3.2.5 Floodplains ........................................................................................................... 18

        3.2.6 Noise ..................................................................................................................... 18

4. Cumulative Impacts ................................................................................................................ 19

    **4.1** Past, Present, and Reasonably Foreseeable Actions .................................................. 20

    **4.2** Cumulative Analysis .................................................................................................... 20

        4.2.1 Wildlife and Habitat ............................................................................................. 20

        4.2.2 Cultural Resources ................................................................................................ 21

        4.2.3 Water Quality ........................................................................................................ 21

        4.2.4 Air Quality ............................................................................................................. 21

        4.2.5 Floodplains ........................................................................................................... 21

        4.2.6 Noise ..................................................................................................................... 21

    4.3 IRREVERSIBLE AND IRRETRIEVABLE COMMITMENTS OF RESOURCES.......................................... 22

5. List of Preparers and Persons and Agencies Contacted.................................................................23

6. References ....................................................................................................................................24

7. EA Determination and Signatures ...............................................................................................25

# APPENDICES

A. Project Area Maps
B. Site Photos
C. Required Permits and Plans
- Notice of Coverage for NPDES Permits from TDEC
- Stormwater Pollution Prevention Plan (SWPPP)
D. Threatened and Endangered Species Documentation
- IPaC list
- USFWS Consultation Letters and correspondence
E. Agency Correspondence Cultural Resources Documentation
- SHPO Correspondence
- THPO Correspondence
F. Socioeconomics and Environmental Justice
- EPA Environmental Justice Documentation
G. Floodplains Supporting Documentation
- Floodplain Map
H. Wetlands Supporting Documentation
- Supporting Documents and AD-1026
I. Copies of Notices of Availability of Draft EA
J. NRCS Soil Maps
K. TN Agricultural Protection Act Documentation
L. Site Selection Factors for New Poultry Facilities' Document
M. Public Comments Received

# 1. INTRODUCTION

## 1.1 Background

The United States Department of Agriculture (USDA) Farm Service Agency (FSA) proposes to provide assistance for the construction of two poultry units consisting of (8) 54' x 600' broiler houses per unit. This EA specifies two projects that have been identified and physically located on two separate parcels of real estate known as Henderson County Tax Map 12 Parcel 13.00 and Map 12 Parcel 13.01, respectively. The total facilities, if established, would have the capacity to house a maximum of 312,000 broilers per poultry unit (624,000 total birds). Appendices A and B contain maps and photos of the proposed project areas. A detailed description of the components of the proposed project, the project sites and related surrounding area of potential effect are further described in Section 2.1 of this document.

## 1.2 Purpose and Need for the Proposed Action

The purpose of the proposed project/action is to implement USDA, Farm Service Agency programs, to make available economic opportunity to help rural America thrive, and to promote agriculture production that better nourishes Americans and help feed others throughout the world. FSA is tasked with this mission as provided for by the Food and Security Act of 1985 as amended, the Consolidated Farm and Rural Development Act as amended, and related implementing regulations found in 7 CFR Parts 762 and 764.

The need for the proposed action is to fulfill FSA's responsibility to provide access to credit, and to help improve the stability and strength of the agricultural economy, including to start, improve, expand, transition, market, and strengthen family farming and ranching operations, and to provide viable farming opportunities for family and beginning farmers and meet the needs of small and beginning farmers, women, and minorities. Specifically, in the case of this loan request, FSA's need is to respond to the applicant's request for funding to support the proposed action.

FSA Farm Loan Program Assistance is not available for commercial operations or facilities that are not family farms, or to those having the ability to qualify for commercial credit without the benefit of FSA assistance. The applicants have been determined to be a family farm as defined by 7 CFR 761.2. The proposed action would allow them the opportunity to establish their family farming operation and provide the economic stability to meet the needs of their family.

In addition, poultry integrators have a demand for new facilities such as these to provide an adequate supply for processing plants and keep them operating at an economically feasible capacity. Specialized livestock facilities, such as those proposed, have a limited useful life as they become functionally obsolete as technology advances. Accordingly, a pipeline of new facilities is necessary to ensure an adequate and economical supply of low-cost protein food for the nation.

## 1.3 Decision To Be Made

FSA's decision is whether to:
- Approve the applicants' loan requests;
- Approve the requests with additional mitigations; or

- Deny the loan requests.

## 1.4 Regulatory Compliance

This Environmental Assessment is prepared to satisfy the requirements of NEPA (Public Law 91-190, 42 United States Code 4321 et seq.); its implementing regulations (40 CFR 1500-1508); and FSA implementing regulations, *Environmental Quality and Related Environmental Concerns – Compliance with the National Environmental Policy Act* (7 CFR 799). The intent of NEPA is to protect, restore, and enhance the human environment through well informed Federal decisions. A variety of laws, regulations, and Executive Orders (EO) apply to actions undertaken by Federal agencies and form the basis of the analysis.

All fifty states have enacted right-to-farm laws that seek to protect qualifying farmers and ranchers from nuisance lawsuits filed by individuals who move into a rural area where normal farming operations exist, and who later use nuisance actions to attempt to stop those ongoing operations. The Right to Farm law for Tennessee (TN Code Title 43 Chapter 26) protects farming operations from nuisance claims when farms were established prior to the use of the area surrounding the agricultural operation for nonagricultural activities and those farms employ methods or practices commonly or reasonably associated with agricultural production.

## 1.5 Public Involvement and Consultation

Scoping is an early and open process to involve agencies, organizations, and the public in determining the issues to be addressed in the environmental document. Among other tasks, scoping determines important issues and eliminates issues determined not to be important; identifies other permits, surveys and consultations required with other agencies; and creates a schedule that allows adequate time to prepare and distribute the environmental document for public review and comment before a final decision is made. Scoping is a process that seeks opinions and consultation from the interested public, affected parties, and any agency with interests or legal jurisdiction.

### 1.5.1 Internal Scoping

USDA staff of various specialties have been consulted regarding the purpose and need, issues, and impact topics appropriate for consideration for the proposed activity. A site visit and pedestrian review was completed by Jon Travis, USDA, Farm Service Agency on 8/12/2021. During the visit there were no concerns noted; therefore, a report or notes referencing the site visit was not necessary.

### 1.5.2 External Scoping

USDA FSA has completed research and the following tasks and efforts:

- Research of U.S. Fish and Wildlife Service (USFWS) - Information, Planning, and Conservation System (IPaC) about the project's potential to affect federally listed species as required by the Endangered Species Act of 1973.

- Consultation with the State Historic Preservation Officer (SHPO) to ensure that compliance with the requirements of Section 106 of the National Historic Preservation Act (NHPA) are met and that significant impacts to historic properties would not result from the project.
- Consultation with Linda Langley of the Coushatta Tribe of Louisiana, Kirk Perry, Lisa John, and Autumn L. Gorrell of the Chickasaw Nation, Tribal Historic Preservation Officers (THPO) to ensure that compliance with the requirements of Section 106 of the NHPA are met and that significant impacts to historic properties would not result from the project.

## 1.5.3 Public Involvement

The draft environmental assessment documents were available for public review and comment during the public comment periods as provided in the published Notice of Availability. The draft and all underlying documents were made available at the Henderson/Decatur County FSA Office Farm Loan Programs, 80-A South Broad Street, Lexington, TN 38351. A Notice of Availability document describing the two specific operations was published in The Lexington Progress.

# 2. DESCRIPTION OF PROPOSED ACTION AND ALTERNATIVES

## 2.1 Alternative A - Proposed Action

The two proposed projects would consist of two sets of eight poultry barns on approximately 127.84 acres and 152.45 acres, respectively, in the Cedar Grove/Wildersville area of Henderson County, TN. The proposed projects include the construction of two sets of (8) 54' x 600' broiler houses, litter storage sheds/compost shed, including site preparation, pads, access road construction, utilities and other related infrastructure.

Based on average bird placement density of one bird per 0.83 square feet, each farm as proposed would have a maximum capacity to house 312,000 broilers per unit. The integrator anticipates the applicants would receive five flocks per year on average. The integrator would determine the target weight of the finished product, which is dependent on supply and demand, integrator needs, and is always subject to change.

Currently, there are dwellings on both tracts. Each operation will have its own access point off of the adjacent county roads. The project sites are predominantly surrounded by a combination of farmland and woodland on all sides with some residences dispersed about. The homes are dispersed in all directions of the proposed sites. The closest buildings to the proposed sites are located on the sites themselves. The area produces an abundance of row crops and livestock. Based on aerial photography, it appears that there are no CAFO facilities within a 5-mile radius of the proposed site. From a review of the 2017 USDA NASS Census of Agriculture County Profile, Henderson County produces 1% of state agriculture sales, with 60% of that being crops and 40% being livestock, poultry, and products. According to the 2017 USDA NASS Census of Agriculture County Profile, Henderson County ranked 58th in the state out of 94 counties for poultry and egg production.

From review of NRCS Soil Taxonomy Classification Map (See Appendix L) slopes on the proposed sites range from gently sloping to severe sloping depending on soil type. The applicants have been issued NPDES Stormwater Permits, which would require implementing and maintaining measures that are sufficient to prevent pollution at the site as evidenced by the permit being granted by the TDEC, the regulatory authority.

The most recent USGS water use estimate for Henderson County, Tennessee was prepared in 2015. The total human population of the county at that time was28,015. The total population served by public water supplies was27,798. Livestock use drawn from ground and surface water was estimated at 0.2 milligal per day.

Leveling at the pad sites would occur, with sloping and possible stump removal to accommodate surface water runoff. The pads for the proposed broiler houses would be slightly larger than the dimensions of the houses themselves. There would be additional leveling in the proposed load out area. The access road leading to the proposed barns would require grading and leveling to accommodate hauling of birds, feed, and access for utility trucks. The access road to the proposed site would all be covered with gravel.

There are no connected actions associated with this project proposal at this time with exception of the planned litter sheds.

## 2.2 Alternative B - No Action Alternative

The No Action Alternative means the loan would not be made and the operation described in Section 1.6 above (Proposed Action) would not be built. No significant changes to the proposed site would take place, the project would not move forward, and there would be no impacts.

## 2.3 Alternative C

Alternative locations would not be feasible, as the projects would take place on properties already owned by the applicants. Due to the size and layout of each tract, re-locating the barns in a fashion other than what is being proposed would not prove feasible. The current locations of the proposed barns would provide minimal impact to trees on-site which provide visual and auditory buffers. The proposed sites would involve the least amount of ground disturbance and would have the least impact on surrounding properties.

The proposed site configurations were designed to create the least amount of ground disturbance and vegetation removal, therefore having the smallest impact on the environment and its surroundings. Alternative configurations were not considered due to the possibility of having a greater impact on the affected environment, but for integrated operations the farm owners/operators must comply with very specific logistical and design requirements.

## 2.4 Alternatives Considered but Eliminated from Analysis

Other locations for the farms or other uses for the tracts of land in question are not considered here because such options do not meet the purpose and need for the proposed actions. The applicants have applied for FSA guaranteed loans to fund the construction of two new large CAFOs. FSA's decisions to be made are to approve each loan for the proposed farms as designed, to deny each loan, or to approve each loan with additional mitigations, practices, or methods that would be needed to minimize or eliminate impacts to protected resources.

Similarly, alternative designs of farm components are not considered as each producer's agreement with a poultry integrator requires adherence to the integrator's construction and equipment specifications, which are in place to ensure consistency, maximize production, and reduce loss. Design alternatives that would involve modification of features and infrastructure put in place by an integrator would jeopardize the availability of bird placement and be grounds for a potential loss of contract with the integrator, thus resulting in loss of viability of the farm. Accordingly, this alternative would not warrant further consideration.

# 3. AFFECTED ENVIRONMENT AND IMPACTS

The impacts to several protected resources, as defined in FSA Handbook 1-EQ (Revision 3) Environmental Quality Programs for State and County Offices, are considered in this EA. Some resources are eliminated from detailed analysis following CEQ regulations (40 CFR 1501.7), which state that the lead agency shall identify and eliminate from detailed study the issues that are not significant or that have been covered by prior environmental review, narrowing the discussion of these issues in the document to a brief presentation of why they would not have a significant effect on the human or natural environment. Resources that are not eliminated are carried forward for detailed analysis. The table below shows the resources that are eliminated from detailed analysis and those carried forward. Section 3.1 contains discussions of those resources eliminated form detailed analysis. Section 3.2 describes the existing conditions for resources carried forward for detailed analysis and the anticipated impacts to those resources resulting from the Proposed Action.

| Resource | Eliminated | Carried Forward |
|---|---|---|
| Wildlife and Habitat | | x |
| Cultural Resources | | x |
| Coastal Barriers | x | |
| Coastal Zones | x | |
| Wilderness Areas | x | |
| Wild and Scenic Rivers, NRI | x | |
| National Natural Landmarks | x | |
| Sole Source Aquifers | x | |
| Floodplains | | x |
| Wetlands | x | |
| Soils | x | |
| Water Quality | | x |
| Air Quality | | x |
| Noise | | x |
| Important Land Resources | x | |
| Socioeconomics and Environmental Justice | x | |

## 3.1 Resources Eliminated from Detailed Analysis

### Coastal Barrier Resources System

Coastal barriers are eliminated from detailed analysis as there are no designated Coastal Barriers in Tennessee.

### Coastal Zone Management Areas

Coastal Zone Management Areas are eliminated from detailed analysis because there are no Coastal Zone Management Areas in Tennessee.

## Sole Source Aquifers

Sole source aquifers are eliminated from detailed analysis because there are no sole source aquifers in Tennessee.

## Important Land Resources

Prime and unique farmland, forestland and rangeland resources are eliminated from detailed analysis because the proposed action would not result in prime and/or important farmland being converted to a nonagricultural use.

## Soils

Soils are eliminated from detailed analysis because the land would not be cropped and is therefore not subject to the Highly Erodible Land provisions of the Food Security Act.

## Wetlands

Wetlands were eliminated from detailed analysis because there are no wetlands in the project area and the project would not result in discharge or fill into any wetlands. FSA completed a pedestrian survey of the project area. In addition, applicants executed form AD-1026 to certify compliance with the highly erodible land and wetland conservation provisions.

## Wild and Scenic Rivers/Nationwide Rivers Inventory (NRI)

Wild and Scenic Rivers/Nationwide Rivers Inventory are eliminated from detailed analysis because the Proposed Action is not located within ¼ mile of a Wild and Scenic River or River listed on the Nationwide Rivers Inventory and the Proposed Action would not involve destruction or alteration or cause a disturbance to such a river. The nearest Wild and Scenic River in the state, The Obed River, located in the Eastern part of TN, will not be impacted. There are no rivers listed on the Nationwide Rivers Inventory in Henderson County and any contiguous counties that will be impacted.

## Wilderness Areas

There are eleven wilderness areas in Tennessee all located in the Eastern part of the state. There are two wilderness areas in Kentucky located in the Eastern part of the state. Illinois has eight wilderness areas. Overall, the nearest wilderness area being The Lusk Creek Wilderness Area located in Eddyville, Illinois, which is approximately 148 miles North of the proposed actions. Therefore, the proposed actions will not have an impact on Wilderness Areas.

## National Natural Landmarks

There are 13 National Natural Landmarks in Tennessee. The site of the Proposed Actions is not located near any of these, nor does it threaten to alter or impair them. The closest National Natural Landmark, McAnulty Woods, located in Hardeman County, Tennessee, is approximately 56 miles Southwest of the Proposed Site. Therefore, National Natural Landmarks are eliminated from detailed analysis.

## Socioeconomics and Environmental Justice

The EPA Environmental Justice Screening and Mapping Tool was utilized to analyze demographic indicators within a 1 mile-radius (3.14 square miles) from the proposed site based on data retrieved on November 19, 2021. The approximate population is 107 people within the 1-mile radius (3.14 square

miles). The demographic index is 30% with a state average of 31% and national average of 36%. According to the EPA Environmental Justice (EJ) Screen Map Descriptions, "the Demographic Index in EJSCREEN is a combination of percent low-income and percent minority, the two demographic factors that were explicitly named in Executive Order 12898 on Environmental Justice." The people of color population value is 15% with a state average of 26% and national average of 39%. The low-income population is 44% with a state average of 36% and national average of 33%. The linguistically isolated population value is 0% with a state average of 2% and national average of 4%. The population with less than high school education value is 19% with a state average of 13% and national average of 13%. Population under 5 years of age is 3% with a state average of 6% and national average of 6%. The population over 64 years of age is 12% with a state average of 16% and national average of 15%. No impact to population, housing, income, or employment in the region are anticipated to result from the Proposed Action, nor are disproportionate adverse impacts to minority or low-income populations anticipated. Therefore, socioeconomics and environmental justice are not carried forward for detailed analysis.

## 3.2 Resources Considered with Detailed Analysis

This section describes the environment that would be affected by implementation of the alternatives described in Chapter 2. Aspects of the affected environment described in this section focus on the relevant major resources or issues. Under the no action alternative, the proposed action would not be implemented. The no action alternative would result in the continuation of the current land and resource uses in the project area. This alternative will not be evaluated further in this EA.

### 3.2.1 Wildlife and Habitat

**Existing Conditions**

The proposed project site is currently in row crop ground. Wildlife typical of such areas include whitetail deer, squirrels, wild turkeys, raccoons, opossums, skunks, and armadillos. A site visit was conducted by FSA staff on August 12, 2021 and no wildlife were observed by Agency Personnel.

An official list of threatened and endangered species and designated critical habitat for this area of Henderson County was obtained from the US Fish and Wildlife Service (USFWS) Information for Planning and Conservation (IPaC) system (See Appendix D). The following species are known to occur in this area of the county: Northern Long-eared Bat *Myotis septentrionalis,* Indiana Bat *Myotis sodalis,* and American Kestrel Falco *sparverius paulus*. The threatened and endangered species list states there are no critical habitats within the project area.

FSA consulted with the USFWS and TWRA on September 1, 2021 regarding the potential of the proposed actions to affect threatened and endangered species. US Fish and Wildlife Service replied to FSA on September 7, 2021.The consultation response stated, "We are not aware of any federally listed species, including the ones listed above, that are expected to occupy the project area. Based on the scope of the project and lack of proximity to known records of federally listed species, we believe that you have adequately addressed the potential for impacts to listed species."

## Impacts of Proposed Action

According to the SWPPPs (See Appendix C) that was developed to obtain a construction permit for this proposed facility, an estimated 25.5 and 18.9 acres of ground disturbance would occur. The SWPPP for Project A indicates that the disturbance will take place in three separate phases. Phase 1 of the site construction involves installation of initial BMPs and stripping topsoil from the active portions of the site. Phase 2 will involve shaping for the barn sites and adjacent swales. Phase 3 will consist of topsoil spreading and grass establishment on all areas not covered by barns and gravel. The SWPPP for Project B consists of one phase; however, similar practices to Project A will be followed. The SWPPPs identify erosion and sediment control measures including plans to implement silt fences, rip-rap, sediment traps, pre-construction cover, temporary seeding, mulching, and permanent seeding, which if implemented and maintained, will cause little to no impact to adjoining properties and water quality.

No significant impacts to Wildlife and Habitat would be expected to result from the Proposed Action.

## 3.2.2 Cultural Resources

### Existing Conditions

Because the Proposed Action involves some ground disturbing activities in areas not previously evaluated or previously disturbed to the depth required for the Proposed Action, cultural resources require detailed analysis. A site visit was conducted on August 12, 2021 by USDA, Farm Service Agency. The proposed construction sites are currently vacant, but there are buildings located on each tract. The tract of land for Project A has a house and open shed on it, while the tract for Project B has a farm shop and attached shed. There are no sites listed on the National Register of Historic Places within 1 mile of the proposed sites.

FSA consulted with the Tennessee State Historic Preservation Office (SHPO) on September 1, 2021 and received a response on the same day. The letter provided by the SHPO indicates that after considering the documentation submitted, there are no National Register of Historic Places listed or eligible properties affected by the proposed undertaking. See Appendix E.

Additionally, FSA consulted with the following federally recognized Tribes: Chickasaw Nation and Coushatta Tribe of Louisiana. Letters describing the location and details of the Proposed Action were sent to these Tribes on September 1, 2021. Responses were received from the Chickasaw Nation on September 17, 2021. The letter states support of the proposed undertaking and The Chickasaw Nation is not presently aware of any specific historic properties, including those of traditional religious and cultural significance, in the area. FSA received no further responses from tribes. See Appendix E for letters and related correspondence.

### Impacts of Proposed Action

Based on the consultation with SHPO and the Tribes listed above, no impacts to known cultural resources would be anticipated to result from the Proposed Actions. Impacts to previously unidentified historic properties, including archaeological and historic resources, could occur during land clearing and construction. If such resources were encountered during construction, activities would stop, FSA State and National Office personnel would be notified, and the resources would be professionally evaluated for eligibility for listing on the National Register of Historic Places.

### 3.2.3 Water Quality

## Existing Conditions

In Tennessee, The Tennessee Department of Environment and Conservation (TDEC) has the authority to enforce provisions of the Clean Water Act that are protective of water quality and to issue permits that are protective of water quality standards. This authority is delegated to TDEC by the Environmental Protection Agency. The TDEC Division of Water Resources issues Stormwater National Pollutant Discharge Elimination System (NPDES) Permits to protect surface waters from contamination from runoff associated with construction. Coverage under the permit is required for construction that causes ground disturbance exceeding 1 acre. The applicants have obtained the required NPDES Permits, which are identified as permit #TNR122437 (Project A) and TNR122171 (Project B). The applicants have also supplied Storm Water Pollution Prevention Plans (SWPPP) developed by William P. Smith, CPESC, L.I. Smith and Associates, Inc. (Project A) and Wood Environment & Infrastructure Solutions, Inc (Project B). SWPPPs are documents that describe construction activities to prevent stormwater contamination, control sedimentation and erosion, in order to prevent significant harm to surface waters and comply with the requirements of the Clean Water Act. TDEC is also responsible for issuing non-stormwater NPDES Permits to facilities that discharge water. Animal Feeding Operations and Confined Animal Feeding Operations that do not discharge into waters of the state do not require NPDES permits for ongoing operations.

## Impacts of Proposed Action

The Proposed Action would disturb approximately 25.5 acres (Project A) and 18.9 acres (Project B) of land on each farm. The applicants have received coverage under Stormwater NPDES General Permit #'s TNR122437 (Project A) and TNR122171 (Project B) With adherence to the best management practices described in the SWPPPs, minimal impacts to surface water from the proposed construction are anticipated. The farms will be dry-litter poultry operations and therefore, do not require CAFO permits in Tennessee. The farms would not discharge into waters of the state; therefore, no impacts to state surface waters would be anticipated.

The applicant's SWPPP was developed by William P. Smith, CPESC, L.I. Smith and Associates, Inc. (Project A) and Wood Environment & Infrastructure Solutions, Inc (Project B). The following Best Management Practices (BMP's) are included in the SWPPP. These BMP's indicate that the disturbance for Project A will take place in three separate phases. Phase 1 of the site construction involves installation of initial BMPs and stripping topsoil from the active portions of the site. Phase 2 will involve shaping for the barn sites and adjacent swales. Phase 3 will consist of topsoil spreading and grass establishment on all areas not covered by barns and gravel. The SWPPP for Project B consists of one phase; however, similar practices to Project A will be followed. It is also important to note that per the SWPPP, water would leave the active project site at 11 locations (outfalls) for Project A and three locations (outfalls) for Project B. There are no identified existing wetlands that would be impacted by this project and no industrial discharges (See Appendix C).

No significant impacts to water quality are anticipated to result from the Proposed Action.

### 3.2.4 Air Quality

**Existing Conditions**

The proposed farms would not be required to obtain an air permit in accordance with TDEC, the state air permitting authority, since air emissions for defined criteria pollutants at the facility do not exceed the permitting thresholds considered protective of air quality. Potential air quality effects considered here include odor and dust production, which may be associated with construction activities and the ongoing operations of the farms.

The sites of the Proposed Action lie in Henderson County in a rural area where agriculture, including livestock feeding operations, are common. From aerial photography, it appears there are no other CAFO facilities within a 5-mile radius of the site.

No Air Quality concerns are noted in the NMP.

**Impacts of Proposed Action**

Construction activities that disturb the soil surface could generate dust. Such impacts would be minor, temporary, and localized, generally confined to the farm property and ongoing only during construction. Exposed soils could be wet down to control fugitive dust. Similarly, during construction, minor and localized emissions associated with heavy machinery could be expected. None of these construction-related impacts would have a significant or long-term adverse impact to surrounding air quality.

During operation of the farms, roads used by delivery trucks would be gravel to minimize dust associated with travel. Dust generated while the poultry facility is in operation would occur mostly during feeding. Humidity and misting systems inside poultry houses would minimize dust within the barns.

Odor would be controlled through management of the poultry barns' ventilation systems as is required by integrators for flock health. The applicants would dispose of mortalities according to their Best Management Practices (BMP's).

The poultry houses would be cleaned per integrator specifications between flocks as appropriate on an as-needed basis. Poultry houses are typically cleaned out completely with a front-end loader once a year. All litter is ultimately removed from the site.

The Proposed Action is located approximately 3.67 miles northwest of Parkers Crossroads in Henderson County, TN.

Dilution of odors is caused through the mixing of odors with ambient air and is a function of distance, topography, and meteorological conditions. Prevailing winds are from the South and Southwest and would serve to facilitate the dispersion of odors to a North and Northwestern direction. Based on the climate of the Southeastern United States, there would be a few days in the year when weather conditions and humidity may cause odor to linger in the vicinity.

Odor impacts would not be expected to be significant.

## 3.2.5 Floodplains

### Existing Conditions

The Proposed Action would involve disturbance of 25.5 acres (Project A) and 18.9 acres (Project B). Based on the SWPPP & FEMA Flood Panel 47077C0040D, the proposed poultry houses would be located in an area of minimal flood hazard. See Appendix J for flood mapping.

### Impacts of Proposed Action

Impacts to floodplains are expected to be minimal. All proposed structures and ground disturbance, including the access roads would be built outside of existing floodplains.

## 3.2.6 Noise

### Existing Conditions

Existing conditions on site are generally quiet, although noise from farm tractors and equipment, truck traffic, cattle, and other farming and human activity does exist, but is temporary in nature. See Appendixes A and B.

### Impacts of the Proposed Action

The Proposed Action would establish two new eight house integrated poultry operations. Noise levels would increase slightly during normal, daylight working hours during the construction phase of this project, which typically lasts about six months. Upon completion, noise from the Proposed Action would permanently increase noise levels in this area; however, noise from birds would be insignificant as they are contained within the poultry houses, which are set back from property lines and further muffled by insulation within these structures and vegetative buffers. These measures would also aid in mitigating periodic equipment usage and truck noise associated with the movement of birds, feed, supplies and materials. Such activities would rarely take place other than during daylight hours, be infrequent in nature, of brief duration and low intensity.  Similarly, noise from generators would be limited to a few minutes of periodic testing and they would only operate on a temporary basis in the event of emergencies should power be lost. As a result, noise would be of irregular and infrequent duration and would not be significant. Additionally, Tennessee's Right to Farm Law protects operation of farms that were established prior to the use of the area surrounding the agricultural operation for nonagricultural activities and those farms which employ methods or practices commonly or reasonably associated with agricultural production. As integrated poultry production is a mainstay of the state's economy the related production methods have long been the accepted prevailing practice for widespread production both in Tennessee and throughout the country. The proposed action is not expected to significantly affect ambient noise levels in the area or the nearest dwelling.

# 4. CUMULATIVE IMPACTS

The cumulative impacts analysis is important to understanding how multiple actions in a particular time and space (e.g., geographic area) impact the environment. The CEQ regulations define cumulative effects as "...the impact on the environment, which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions regardless of what agency (Federal or non-Federal) or person undertakes such actions" (40 CFR § 1508.7). Whereas the individual impact of one project in a particular area or region may not be considered significant, numerous projects in the same area or region may cumulatively result in significant impacts.

Cumulative impacts most likely arise when a relationship exists between a proposed action and other actions occurring in a similar location or time period. Actions overlapping with or in proximity to the proposed action would be expected to have more potential for a relationship than those more geographically separated. Similarly, actions that coincide in time may have the potential for cumulative impacts.

Establishing an appropriate scope for cumulative impacts analysis is important for producing meaningful analysis that appropriately informs agency decision making. This involves identifying geographic or temporal boundaries within which to identify other activities that could contribute to cumulative impacts to resources. Boundaries should consider ecologically and geographically relevant boundaries which sustain resources of concern. Temporal boundaries will be dependent on the length of time the effects of the proposed action are estimated to last and analysis commensurate with the project's impact on relevant past, present, and reasonably foreseeable activities within those boundaries. For example, small scale projects with minimal impacts of short duration would not likely contribute significantly to cumulative impacts. CEQ guidance (2005) reinforces this, stating:

> "The scope of the cumulative impact analysis is related to the magnitude of the environmental impacts of the proposed action. Proposed actions of limited scope typically do not require as comprehensive an assessment of cumulative impacts as proposed actions that have significant environmental impacts over a large area. Proposed actions that are typically finalized with a Finding of No Significant Impact usually involve only a limited cumulative impact assessment to confirm that the effects of the proposed action do not reach a point of significant environmental impacts"

This cumulative impact analysis focuses on the potentially affected resource (identified in Section 3.2 of this document) and uses natural local boundaries to establish the geographic scope within which cumulative impacts could occur. Relevant past, present, and reasonably foreseeable activities identified in Section 4.1 are based on potential geographic and temporal relationships with the proposed action within those identified boundaries. Cumulative effects on those resources are described in Section 4.2.

## 4.1 Past, Present, and Reasonably Foreseeable Actions

Analysis of cumulative analysis is forward-looking and focuses on Henderson County where the proposed action would be implemented and the related area, which includes the resources of concern. The purpose is to assess if the reasonably foreseeable effects of the proposed action would have an additive relationship to other past effects that would be significant, and to examine its relationship to other actions (e.g. Federal, State, local, and private activities) that are currently taking place or are expected to take place in the reasonably foreseeable future.

Federal, State, local, and private activities that are currently taking place, have occurred in the past, or may reasonably be assumed to take place in the future in the cumulative effects area include the following: Per US Census Quick Facts, Henderson County encompasses 520.07 square miles, and has an estimated population of 28,117 as of July 1, 2019. According to the 2017 Census of Agriculture for Henderson County, Tennessee, there were 786 farms encompassing 153,395 total acres with an average farm size of 195 acres. Based on the 2017 Census of Agriculture, 60%of the farm related products sold in Henderson County were crops, and 40% were livestock, poultry, and products. The total market value of products sold was $29,164,000.

## 4.2 Cumulative Analysis

Some resources considered for detailed analysis above (in Section 3.2) could be directly or indirectly affected by the Proposed Actions and therefore the Proposed Actions could contribute to additive or interactive cumulative effects to these resources. For other resources, no such contributions to cumulative effects are anticipated because no direct or indirect impacts would occur based on program requirements.

The significance of cumulative effects is dependent on how impacts compare with relevant thresholds, such as regulatory standards. Regulatory standards can restrict development by establishing thresholds of cumulative resource degradation (CEQ 1997):

> "Government regulations and administrative standards...often influence developmental activity and the resultant cumulative stress on resources, ecosystems, and human communities. They also shape the manner in which a project may be operated, the amount of air or water emissions that can be released, and the limits on resource harvesting or extraction."

Cumulative effects in this analysis are described relative to regulatory standards and thresholds in accordance with CEQ guidance. FSA relies on the authority and expertise of regulatory agencies, which have broad knowledge of regional activities that could affect the sensitive resources they are responsible for protecting, and to ensure through their permitting and consultation processes that its activities are not likely to contribute to significant negative cumulative resource impacts.

### 4.2.1 Wildlife and Habitat

Contributions of the Proposed Action to cumulative impacts include removal of existing vegetation and the loss and fragmentation of wildlife habitat. No impacts to Threatened and Endangered Species are anticipated based on program requirements. The applicants have agreed to minimize tree loss. The

applicants also propose to replant disturbed areas around the proposed sites with permanent vegetation and grasses after construction of the proposed facilities, which could provide some value as wildlife habitat. Such impacts would add to vegetation and habitat lost as a result of past, present, and reasonably foreseeable activities in the region of the Proposed Actions, including loss of native vegetation communities to agriculture, residential and commercial development and road building, recreation and other human activities. The Proposed Actions would not be anticipated to result in long term or adverse impacts or to endangered species or their habitat. No cumulative impacts are anticipated based on program requirements.

## 4.2.2 Cultural Resources

Based on program requirements, which call for coordination and consultation with State and Tribal Historic Preservation Offices, no impacts to known cultural resources are expected to result from the Proposed Actions. There is the potential for encountering unknown cultural resources during construction. Though unlikely, potential loss and damage to unknown cultural resources could occur, adding to similar potential impacts from other past, ongoing, and future developments that have the potential to degrade and destroy cultural resources.

## 4.2.3 Water Quality

During construction of the Proposed Actions there is the potential for mobilization of exposed soil; however, those impacts would be temporary and minor, and minimized by adherence to terms of the SWPPP. Such impacts would add to impacts to water quality resulting from residential, municipal, industrial, and commercial development, particularly the use of septic systems, as well as runoff from roads and development, and agricultural production. Once the disturbed areas are revegetated or otherwise stabilized, no impacts to water quality would be expected. Since there are no long-term effects to water quality, the proposed action would not be expected to contribute significantly to cumulative effects to water quality.

## 4.2.4 Air Quality

Dust would be generated from soil disturbance and equipment usage during construction and during operation because of equipment use, delivery trucks, and feeding systems. Such impacts would be minor, intermittent, and localized. Though such impacts are not expected to be significant, they would add to dust generated by other activities in the immediate vicinity of the farms.

Odor impacts from the proposed action including from the barns, land application of litter on area farms, though not significant, would add to other sources of odor in the area.

## 4.2.5 Floodplains

The Proposed Action would involve disturbance of 25.5 acres (Project A) and 18.9 acres (Project B). Based on the SWPPP &FEMA Flood Panel 47077C0040D, the proposed poultry houses would be located in an area of minimal flood hazard. See Appendix J for flood mapping. No cumulative impacts would be expected.

### 4.2.6 Noise

Increases in noise levels would be minimal compared to existing conditions. There are no local or state noise ordinances based on Program Requirements.

## 4.3 IRREVERSIBLE AND IRRETRIEVABLE COMMITMENTS OF RESOURCES

NEPA requires that environmental analysis include identification of any irreversible and irretrievable commitments of resources which would be involved should an action be implemented. The term irreversible refers to the loss of future options and commitments of resources that cannot be renewed or recovered or can only be recovered over a long period. Irreversible commitments apply primarily to the use of nonrenewable resources, such as minerals or cultural resources, or to factors such as soil productivity, that are renewable only over a long period. Irretrievable refers to the loss of production or use of natural resources. For example, when a road is built through a forest, some, or all, of the timber production from an area is lost irretrievably while an area is serving as a road. The production lost is irretrievable, but the action is not irreversible. If the use changes, it is possible to resume timber production. No irreversible resource commitments would occur as a result of the Proposed Action. Irretrievable resources include those raw materials and fuels used during construction.

# 5. LIST OF PREPARERS AND PERSONS AND AGENCIES CONTACTED

| List of Preparers | |
|---|---|
| **Name and Title** | **Education and Experience** |
| Lisa A. Lien,<br>Farm Loan Specialist and State Environmental Coordinator, FSA, Tennessee | Bachelor of Science, Animal Science<br>Years of Experience: 5 |
| Jon Travis,<br>Farm Loan Officer, FSA, Tennessee | Bachelor of Science, Agriculture<br>Master of Science, Agricultural Economics<br>Years of Experience: 11 |

| Persons and Agencies Contacted | |
|---|---|
| **Name and Title** | **Affiliation** |
| E. Patrick McIntyre, Jr. | Tennessee SHPO |
| Linda Langley | Coushatta Tribe of Louisiana |
| Autumn Gorrell | Chickasaw Nation |
| Kirk Perry | Chickasaw Nation |
| Lisa John | Chickasaw Nation |
| Dustin Boles | Tennessee USFWS |
| Rob Todd | Tennessee TWRA |
| Roger McCoy | TDEC Division of Natural Areas |

# 6. REFERENCES

**CEQ 1997. Council on Environmental Quality (CEQ). 1997. Guidance under the National Environmental Policy Act. December.**

**EPA Environmental Justice Screening and Mapping Tool:** https://ejscreen.epa.gov/mapper/

**FEMA**: https://msc.fema.gov/portal

**IPAC Information**: https://ecos.fws.gov/ipac/

**NEPASSIST**: https://www.epa.gov/nepa/nepassist

**NPS National Natural Landmarks:** https://www.nps.gov/subjects/nnlandmarks/nation.htm and https://www.nps.gov/subjects/nnlandmarks/site.htm?Site=MCWO-TN

**Tennessee Department of Environment and Conservation:** https://www.tn.gov/environment/program-areas/wr-water-resources/watershed-stewardship/watersheds-by-basin/mississippi-river-basin0/wr-ws-north-fork-obion-river-watershed.html

**USDA Census of Agriculture County Profile:** https://www.nass.usda.gov/Publications/AgCensus/2017/Online_Resources/County_Profiles/index.php

**US Census Bureau Quick Facts:** https://www.census.gov/quickfacts/fact/table/hendersoncountytennessee,US/PST045219

**USGS 2015 Water-Use in the United States:** https://water.usgs.gov/watuse/data/

**UT Site Selections Factors for New Poultry Operations:** https://extension.tennessee.edu/publications/Documents/SP592.pdf

**Web Soil Survey (WSS):** https://websoilsurvey.nrcs.usda.gov/app/HomePage.htm

**Wild and Scenic Rivers:** https://www.rivers.gov/tennessee.php

# 7. EA DETERMINATION AND SIGNATURES

**ENVIRONMENTAL DETERMINATION – The FSA preparer of the EA determines:**

1. Based on an examination and review of the foregoing information and supplemental documentation attached hereto, I find that this proposed action
   - ✓ would not have a significant effect on the quality of the human environment and, therefore, an EIS will not be prepared OR
   - would have a significant effect on the quality of the human environment and an Environmental Impact Statement (EIS) must be prepared.

2. I recommend that the Project Approval Official for this action make the following compliance determinations for the below-listed environmental requirements.

| Not in compliance | In compliance | Not applicable | |
|---|---|---|---|
| | X | | National Environmental Policy Act |
| | X | | Clean Air Act |
| | X | | Clean Water Act |
| | X | | Safe Drinking Water Act |
| | X | | Endangered Species Act |
| | X | | Coastal Barrier Resources Act |
| | X | | Coastal Zone Management Act |
| | X | | Wild and Scenic Rivers Act/National Rivers Inventory |
| | X | | National Historic Preservation Act |
| | X | | Subtitle B, Highly Erodible Land Conservation, and Subtitle C, Wetland Conservation, of the Food Security Act |
| | X | | Executive Order 11988 and 13690, Floodplain Management |
| | X | | Executive Order 11990, Protection of Wetlands |
| | X | | Farmland Protection Policy Act |
| | X | | Department Regulation 9500-3, Land Use Policy |
| | X | | E.O. 12898, Environmental Justice |

3. I have reviewed and considered the types and degrees (context and intensity) of adverse environmental impacts identified by this assessment. I have also analyzed the proposal for its consistency with FSA environmental policies, particularly those related to important farmland protection, and have considered the potential benefits of the proposed action. Based upon a consideration of these factors, from an environmental standpoint, this project may:
   - ✓ Be approved without further environmental analysis and a Finding of No Significant Impact (FONSI) prepared.
   - Not be approved because of the reasons identified under item b.

| | |
|---|---|
| *[signature]* | 02-15-2022 |
| Signature of Preparer | Date |
| Jon Travis, Farm Loan Officer | |

**Environmental Determination – FSA State Executive Coordinator determines:**

Based on my review of the foregoing Environmental Assessment and related supporting documentation, I have determined:

✓ The appropriate level of environmental review and assessment has been completed and substantiates a Finding of No Significant Impact (FONSI); therefore, an EIS will not be prepared, and processing of the requested action may continue without further environmental analysis. A FONSI will be prepared.

The Environmental Assessment is not adequate and further analysis or action is necessary for the following reason(s): N/A

The Environmental Assessment has established the proposed action cannot be approved for the following reason(s): N/A

Additional SEC Comments: N/A

| *Lisa A. Lien* | Digitally signed by LISA LIEN DN: c=US, o=U.S. Government, ou=Department of Agriculture, cn=LISA LIEN, 0.9.2342.19200300.100.1.1=12001003314386 Date: 2022.02.15 09:29:28 -06'00' Adobe Acrobat version: 2021.011.20039 | **02-15-2022** |
|---|---|---|
| **Signature of SEC** | | **Date** |
| Lisa A. Lien, Farm Loan Specialist | | |

# Proposed Construction of 16 Total Broiler Barns Located on Judge McClough Rd & White Cemetery Rd; Henderson County, TN



Proposed Site
(Project A: 8 Barns)

Proposed Site
(Project B: 8 Barns)

**Clarksburg Quad/1:24,000 Scale**
**Map Created 08/30/2021**

0    0.2    0.4    0.8 Miles

# Proposed Construction of 16 Total Broiler Barns Located on Judge McClough Rd & White Cemetery Rd; Henderson County, TN



**Proposed Site (Project A: 8 Barns)**

**Proposed Site (Project B: 8 Barns)**

**Clarksburg Quad/1:24,000 Scale**
**Map Created 08/30/2021**

0    0.2    0.4    0.8 Miles



Project A Proposed Construction Site-Facing North



Project A Proposed Construction Site-Facing East



Project A Proposed Construction Site-Facing South



Project A Proposed Construction Site-Facing West



Project B Proposed Construction Site-Facing North



Project B Proposed Construction Site-Facing East



Project B Proposed Construction Site-Facing South



Project B Proposed Construction Site-Facing West