# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

| | | |
|---|---|---|
| CONCERNED CITIZENS OF<br>WEST TENNESSEE, | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **1:22-cv-01274-STA-jay** |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| AGRICULTURE, FARM SERVICE AGENCY, | ) | |
| TOM VILSACK, in his official capacity as | ) | |
| Secretary of Agriculture, ZACH DUCHENEAUX, | ) | |
| in his official capacity as Administrator of the | ) | |
| Farm Service Agency, JOHN LITZ, in his official | ) | |
| capacity as the State Executive Director of the | ) | |
| Farm Service Agency, ANDY LEWIS, in his | ) | |
| official capacity as County Executive Director | ) | |
| of the Farm Service Agency, JON TRAVIS, in his | ) | |
| official capacity as Farm Loan Officer at the | ) | |
| Farm Service Agency, NGUYEN, LLC, | ) | |
| TRANG NGUYEN LLC, and | ) | |
| FARM CREDIT MID-AMERICA, FLCA, | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER GRANTING MOTIONS TO DISMISS

Plaintiff Concerned Citizens of West Tennessee, an environmental organization, filed this action for declaratory and injunctive relief against Defendants United States Department of Agriculture ("USDA"); Farm Service Agency ("FSA"); Tom Vilsack, Secretary of Agriculture; Zach Ducheneaux, Administrator of FSA; John Litz, State Executive Director of FSA; Andy Lewis, County Executive Director of FSA; Jon Travis, Farm Loan Officer of FSA; Nguyen, LLC;

Trang Nguyen, LLC;[1] and Farm Credit Mid-America, FLCA ("FCMA").  Plaintiff brings its action under the judicial review provisions of the Administrative Procedure Act, 5 U.S.C. §§ 701–706 ("APA"). Plaintiff alleges that the FSA authorized loan guarantee assistance to the Nguyens without complying with the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq., and in violation of the Consolidated Farm and Rural Development Act ("Con Act"), 7 U.S.C. § 1921 et seq., and that these decisions constitute "final agency action[s] for which there is no other adequate remedy" within the meaning of the APA. 5 U.S.C. § 704. Plaintiff amended its complaint on April 6, 2023. (ECF No. 57.)

Defendant FCMA has filed a motion to dismiss the amended complaint (ECF No 60), as have the Department of Agriculture and the FSA and their officials ("federal defendants").[2] (ECF No. 61.) FCMA has joined in the motion to dismiss of the federal defendants. (ECF No. 63.) Defendants Nguyen, LLC and Trang Nguyen LLC have also filed a motion to dismiss. (ECF No. 62.) Plaintiff was given permission to file a consolidated response to the three motions to dismiss and did so on June 22, 2023. (ECF No. 66.) Defendants have all filed replies. (ECF Nos. 67-69.) For the reasons set forth below, the motions to dismiss the amended complaint are **GRANTED**.[3]

---

[1]  Nguyen, LLC and Trang Nguyen LLC own two industrial scale poultry operations in Henderson County, Tennessee, where they raise chickens for slaughter at Tyson Foods' Humboldt, Tennessee slaughterhouse.  (Amd. Cmplt. ¶ 8, ECF No. 57.)

[2]  Because the Farm Service Agency is an agency within the United States Department of Agriculture, the Court has considered these two defendants and their officials as constituting one entity, i.e., "federal defendants."

[3]  The motion to dismiss (ECF No. 55) is **DENIED** as moot in light of the amended complaint.

<u>Standard of Review</u>

The APA empowers courts to "compel agency action unlawfully withheld or unreasonably delayed[,]" among other powers of review. 5 U.S.C. § 706(1). In enacting the APA, Congress included a limited waiver of sovereign immunity:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

*Id.* § 702.

The Court summarized the standard of review for cases brought under the APA in *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1905 (2020).

> The APA "sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Franklin v. Massachusetts*, 505 U.S. 788, 796, 112 S. Ct. 2767, 120 L.Ed.2d 636 (1992). It requires agencies to engage in "reasoned decisionmaking," *Michigan v. EPA*, 576 U.S. 743, 750, 135 S. Ct. 2699, 192 L.Ed.2d 674 (2015) (internal quotation marks omitted), and directs that agency actions be "set aside" if they are "arbitrary" or "capricious," 5 U.S.C. § 706(2)(A). Under this "narrow standard of review, ... a court is not to substitute its judgment for that of the agency," *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513, 129 S. Ct. 1800, 173 L.Ed.2d 738 (2009) (internal quotation marks omitted), but instead to assess only whether the decision was "based on a consideration of the relevant factors and whether there has been a clear error of judgment," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S. Ct. 814, 28 L.Ed.2d 136 (1971).

In this case, before reaching the issue of whether the decisions underlying this case meet the standard set out above, the Court must first determine if it has subject matter jurisdiction over the action. *See Gross v. Hougland*, 712 F.2d 1034, 1036 (6th Cir. 1983) ("[T]he proper practice is to resolve all questions regarding subject matter jurisdiction prior to ruling upon merits of the claim."). The federal defendants have moved to dismiss the amended complaint pursuant to

Federal Rule of Civil Procedure 12(b)(1) on the ground that Plaintiff lacks standing to bring its claim under the APA. When "as here, a case is at the pleading stage, the plaintiff must 'clearly ... allege facts demonstrating'" standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).  A motion based on lack of associational standing, which is asserted in this case, is decided on a motion to dismiss for lack of subject-matter jurisdiction. *See Coal Operators and Associates, Inc. v. Babbitt*, 291 F.3d 912, 915 (6th Cir. 2002) (noting that while the district court elected to dismiss the non-profit corporation's claims based on the failure to state a claim, "it need not have reached this substantive question because plaintiffs failed to establish that they have standing to sue, which is a jurisdictional requirement.").

"A plaintiff seeking judicial review of agency action under the APA … must not only meet the constitutional requirements of standing, but must also demonstrate prudential standing." *Courtney v. Smith*, 297 F.3d 455, 460 (6th Cir. 2002) (citing *Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 488 (1998) ("We have interpreted § 10(a) of the APA [5 U.S.C. § 702] to impose a prudential standing requirement in addition to the requirement, imposed by Article III of the Constitution, that a plaintiff have suffered a sufficient injury in fact.")). "Prudential standing exists if the interest that the plaintiff seeks to protect is 'arguably within the zone of interests to be protected or regulated by the statute ... in question.' *Id.* (quoting *Nat'l Credit Union Admin.*, 522 U.S. at 488).

When deciding a motion to dismiss under Rule 12(b)(1), courts "accept as true all material factual allegations of the complaint" and construe those allegations in favor of the plaintiff. *Glenn v. Holder*, 690 F.3d 417, 420 (6th Cir. 2012) (quoting *White v. United States*, 601 F.3d 545, 551 (6th Cir.2010)).  The plaintiff has the burden of proving jurisdiction in order to survive a Rule 12(b)(1) motion." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir.

1990). A "facial attack" under this rule, as brought in this case by the federal defendants, questions the "sufficiency of the pleading." *Holman v. Vilsack*, 582 F. Supp. 3d 568, 573 (W.D. Tenn. 2022); *see generally Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) ("Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack."). Thus, a party raising a facial challenge argues that a complaint does not adequately plead standing even accepting its facts as true. *See Mosley v. Kohl's Dep't Stores, Inc.*, 942 F.3d 752, 756 (6th Cir. 2019). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *O'Bryan v. Holy See*, 556 F.3d 361, 376 (6th Cir. 2009).

The Sixth Circuit has extended the plausibility test set out in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to a motion to dismiss contesting standing. "The Supreme Court has held that standing's elements 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof,' which indicates that the same rules apply at this pleading stage. The Court has also made clear that a complaint must 'clearly ... allege facts demonstrating' standing." *Assn of Am. Physicians & Surgeons v. United States Food & Drug Admin.*, 13 F.4th 531, 543 (6th Cir. 2021).

The Nguyens and the FCMA have moved to dismiss the complaint against them on the ground that they are non-federal agencies and, therefore, the APA does not apply to them. They bring their motions under Rule 12(b)(1) for lack of subject matter jurisdiction motion, as well as under Rule 12(b)(6) for failure to state a claim. In reviewing motions to dismiss under Rule 12(b)(6), courts will "'accept all allegations in the complaint as true' and 'determine whether the allegations plausibly state a claim for relief.'" *Roberts v. Hamer*, 655 F.3d 578, 581 (6th Cir. 2011) (citing *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 308 (6th Cir. 2009)).

<u>Background</u>

Plaintiff challenges the federal defendants' environmental review and authorization of loan guarantee assistance to the Nguyens and seeks to halt or curtail operations at the farms because of its environmental concerns under the APA.  Plaintiff specifically asks the Court to:

1.  declare that the Nguyen poultry facilities are not "family farms" eligible for loan guarantee assistance under the USDA's Farm Ownership Loan program;

2.  vacate the guarantees issued by the FSA for loans made to Dan Nguyen and Trang Nguyen;

3.  enjoin the spending of proceeds from loans to Dan Nguyen and Trang Nguyen guaranteed by the FSA;

4.  enjoin the FSA from guaranteeing other loans to industrial scale poultry facilities controlled by Tyson;

5.  vacate the FSA's Environmental Assessment ("EA") and Finding of No Significant Impact ("FONSI") under NEPA;

6.  enjoin the placement of chickens in the Nguyen poultry facilities until a thorough and complete environmental analysis, as required by NEPA, is performed;

**7.**  order the Defendants to implement mitigation measures designed to protect surrounding community members and the environment from harm caused by the Nguyen poultry facilities.

(Amd. Cmplt. p. 68, ECF No. 57.)

The amended complaint alleges that the USDA, through the FSA, "administers a federal lending program intended to help 'family farms' with startup and operational costs." (*Id.* at ¶ 5.) This matter concerns two farm loan guarantees that were issued in May and August 2022.  On May 13, 2022, the FSA issued a loan guarantee to Defendant FCMA, a private lender, securing $1,598,400 of a farm loan to Defendant Nguyen LLC. On August 4, 2022, the FSA issued a loan guarantee to FCMA, securing $1,598,400 of a farm loan to Defendant Trang Nguyen. The Nguyens used the proceeds of both loans to construct facilities to operate two poultry farms.

According to Plaintiff, the poultry farms were not "family farms" but, instead, were "large industrial chicken operations affiliated with Tyson… a multibillion-dollar, international conglomerate that does not need help from federal taxpayers." (*Id.*) Plaintiff alleges that the federal loan guarantees were "illegal because the lending program is reserved for helping 'family farms.'" (*Id.* at ¶ 6.) It is undisputed that the farms were fully operational by the time the lawsuit was filed.

Plaintiff filed this lawsuit under the APA, alleging that the FSA violated the Con Act and the NEPA by guaranteeing the two loans that Defendant FCMA issued to Defendants Nguyen. Plaintiff alleges that "federal law requires that the [the FSA] undertake a thorough analysis of the environmental impacts of, and alternatives to, the federal action" but failed to do so. (*Id.* at ¶ 7.) "The FSA's environmental analysis [was] inadequate and perfunctory, and it fail[ed] to consider the cumulative environmental impacts of industrial scale poultry production." (*Id.*) Additionally, "[b]ecause the Nguyen facilities are not 'family farms' as defined by FSA regulations, FSA's approval of the loan guarantees requested by the Nguyens contravenes limitations imposed on the farm loan program by the Consolidated Farm and Rural Development Act." (*Id.* at ¶ 12.) And, "[t]he FSA's rubber-stamp approval of the loan guarantees, without taking the requisite hard look at environmental impacts, also violates the requirements of the National Environmental Policy Act." (*Id.* at ¶ 15.)

Plaintiff seeks a declaration that

the Nguyen facilities are not "family farms" eligible for the federal farm loan program because Tyson controls the design, construction, and operation of those facilities. In addition, this Court should revoke the illegal loan guarantees, enjoin FSA's guarantee assistance to the Nguyens, enjoin the FSA from illegally guaranteeing other loans to industrial scale poultry facilities controlled by Tyson, invalidate FSA's perfunctory Environmental Assessment ("EA") and Finding of No Significant Impact ("FONSI") under NEPA, and require environmental review and environmental mitigation measures in compliance with relevant laws.

(*Id.* at ¶ 16.)

The background and purpose of the Con Act and the NEPA are not disputed. The FSA has broad authority under the Con Act to provide and insure loans to farmers and ranchers. *See* 7 U.S.C. § 1921. Under the Farm Loan Program, the FSA guarantees a percentage of a qualified agricultural lender's loan that may be used for agricultural purposes, including acquisition of property to create and construct a farm. *See* 7 C.F.R. §§ 762.121(b)(1), (2). To qualify for FSA's loan guarantee, a borrower must seek to operate a "family farm" in accordance with FSA's regulations, meaning an agricultural operation where the borrower performs the "majority of day-to-day, operational decisions, and all strategic management decisions" as well as a "substantial amount of labor to operate the farm ...." *Id.* § 761.2.

Once the FSA commits to providing a loan guarantee, the lender makes, funds, secures, and services the loan; the FSA plays no role in the ongoing management of the farm, nor does the FSA have legal authority to directly control the activities on the farm. The lender must ensure that loan funds are not used for unauthorized purposes, *id.* § 762.140(b)(1), and verify that the borrower complies with all applicable law and regulations related to the loan. *Id.* § 762.140(b)(3). Absent a default on the loan, subsequent liquidation, and the lender's demonstration of loss, the FSA does not provide any funding to the lender. *Id.* § 762.149.

NEPA, 42 U.S.C. §§ 4321 *et seq.*, establishes a process for federal agencies to consider the environmental impacts of their actions. NEPA imposes procedural, not substantive, requirements. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989) ("[I]t is now well settled that NEPA itself does not mandate particular results, but simply prescribes the necessary process."). Under the NEPA, a federal agency must prepare an Environmental Impact Statement ("EIS") for "major Federal actions" that "significantly" affect the environment. 42 U.S.C. §

4332(2)(C). To determine whether the impact of a proposed federal action will be significant enough to warrant an EIS, the agency may prepare an Environmental Assessment ("EA"). If, based on the EA, the agency concludes that the proposed action will not significantly impact the environment, it issues a Finding of No Significant Impact ("FONSI") in lieu of an EIS. *See generally Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 756-58 (2004).

The FSA must "[u]se all practical means to protect and, where possible, improve the quality of the human environment and avoid or minimize any adverse environmental effects of FSA actions," and "[e]nsure that the requirements of NEPA and other State and national environmental policies designed to protect and manage impacts on the human environment are addressed… at the earliest feasible stage in the planning of any FSA action… [d]uring all stages of the decision making process… [u]sing professional and scientific integrity in their discussions and analyses, identifying applicable methodologies, and explaining the use of the best available information." 7 C.F.R. § 799.2.

Before issuing the guarantees at issue in this case, the FSA prepared an EA to analyze the Nguyen farms' potential environmental impacts and concluded that the farms did not pose a significant impact to the environment and, accordingly, issued a FONSI.  Plaintiff disagrees with this conclusion and the manner in which it was arrived.

<u>Analysis</u>

<u>Non-Federal Defendants</u>

The FCMA is the lender for the loans guaranteed by the FSA, and the Nguyens are the borrowers of the loans.  (Amd. Cmplt. ¶ 11.)  The FCMA and the Nguyens, the non-federal defendants, argue that Plaintiff has not asserted that they have engaged in any "illegal" or "wrongful" practices; instead, Plaintiff challenges actions taken by the federal defendants.

Defendants point out that neither the Con Act nor the NEPA provide for private causes of action, and the APA only allows judicial review of federal agency action. Plaintiff has responded that the non-federal defendants are joined as parties pursuant to Rule 19(a) of the Federal Rules of Civil Procedure. Rule 19(a) provides that "a person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if [] in that person's absence, the court cannot accord complete relief among existing parties." According to Plaintiff, the non-federal defendants may be joined "even when there is no direct cause of action against" them. (Resp. pp. 39-40.)

As noted by Defendants, Rule 19 is a procedural vehicle and cannot create substantive causes of action or relief. In this case, Plaintiff's claims are against the federal defendants, and Plaintiff acknowledges such in its description of the "Nature of the Action."

> Plaintiff challenges the **Defendants' conduct in providing "family farm" subsidies** to Tyson-controlled industrial poultry facilities in West Tennessee. In addition, Plaintiff challenges **the environmental review and authorization of loan guarantee assistance** to Nguyen, LLC and Trang Nguyen LLC….

(Amd. Cmplt. p. 3 (emphasis added); Resp. p. 3.) These actions were clearly taken by the federal defendants rather than the non-federal defendants.

Being a necessary party for purposes of Fed. R. Civ. P. 19 is insufficient to render a defendant properly joined because "before a party will be joined...as a defendant the plaintiff must have a cause of action against it." *Vieux Carre Prop. Owners, Residents & Assocs., Inc. v. Brown*, 875 F.2d 453, 457 (5th Cir. 1989). "[W]hile Rule 19 provides for joinder of necessary parties, it does not create a cause of action against them." *AMS Cap. Holdings Corps v. Vista Strategic Advisory, LLC*, 2008 WL 11351283, at *4 (S.D. Ohio June 10, 2008) (quoting *Davenport v. Int'l Bhd. of Teamsters, AFL-CIO*, 166 F.3d 356, 366, (D.C. Cir. 1999)).

Clearly, non-federal defendants are not "agencies" as defined by the APA and, therefore, cannot be sued under the APA. *See, e.g.*, *Jonas v. Geren*, 2009 WL 10664192, at *9 (W.D. Tenn. June 9, 2009); *see also Karst Envtl. Educ. and Prot., Inc. v. Envtl. Prot. Agency*, 475 F.3d 1291 (6th Cir. 2007) ("[B]ecause nothing in the APA authorizes claims against nonfederal entities ... we shall affirm the district court's dismissal of the complaint against local" non-federal defendants.); *United States v. McNeal*, 2000 WL 924588, at *1 (6th Cir. June 28, 2000) ("[W]e find that the defense attorneys are exempt from suit under the APA as [plaintiff] did not allege that they were employed by any federal agency. The Department of Justice, however, is an agency subject to suit under the APA.").

Furthermore, the NEPA does not provide for a private right of action, and any claims that the NEPA was violated must be brought under the APA.

> Upon review, it is well established that a private right of action does not exist. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 872, 110 S. Ct. 3177, 111 L.Ed.2d 695 (1990); *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 471, 108 S. Ct. 1319, 99 L.Ed.2d 534 (1988). The Sixth Circuit adopts the same interpretation stating that "NEPA does not authorize a private right of action." *Sierra Club v. Slater*, 120 F.3d 623, 630 (6th Cir.1997). However, this court does recognize that while the **"NEPA does not authorize a private right of action ... judicial review [of an administrative decision allegedly in violation of the NEPA] is granted through the Administrative Procedure Act."** *Friends of Tims Ford v. Tennessee Valley Authority*, 585 F.3d 955, 964 (6th Cir. 2009); *Sierra Club*, 120 F.3d at 630–31.

*Cronin v. Ohio Dep't of Transp.*, 2011 WL 1297294, at *7 (N.D. Ohio Mar. 31, 2011) (emphasis added). Likewise, the Con Act does not provide for a private right of action. *See Green v. United States*, 8 F. Supp. 2d 983, 993 (W.D. Mich. 1998) (citing *Lundstrum v. Lyng*, 954 F.2d 1142 (6th Cir. 1991)).

Because the Con Act, the NEPA, and the APA only regulate government action, the claims against the non-federal defendants must be dismissed.[4]

Federal Defendants

The federal defendants have moved to dismiss the amended complaint on the ground that Plaintiff lacks standing to bring the action. The amended complaint alleges as follows concerning both the group and its members:

> Plaintiff Concerned Citizens is a non-profit corporation organized under Tennessee law. Concerned Citizens formed in 2022 in direct response to the planned construction and operation of industrial scale chicken growing facilities in the Cedar Grove community in Henderson County, Tennessee. The mission of Concerned Citizens is to protect the natural environment and rural way-of-life in Henderson County and West Tennessee from the impacts of industrial scale chicken operations, and to advocate for the health and well-being of West Tennessee residents and prevent the degradation of the air and water in West Tennessee by industrial scale chicken production.

(Amd. Cmplt. ¶ 21.) Additionally,

> Plaintiff Concerned Citizens is a public benefit corporation. Its membership and decision-making structure are described in its charter and bylaws which are attached hereto and incorporated herein by reference…. The corporation is governed by a board of directors. Officers of the corporation include Thomas Gorden, President and Brenda Scott, Secretary. Members of the corporation include the directors of the corporation, the officers of the corporation, volunteers of the corporation, and any other individual designated by the corporation by a majority vote of the directors.…

> Members and supporters of Concerned Citizens reside in, own businesses or property in, attend church services in, and/or regularly visit the Cedar Grove area where the Nguyen facilities are located. Many members and supporters are part of Cedar Grove's longstanding Black farming community.

---

[4] Plaintiff contends that the FSA has the authority under 7 C.F.R. § 762.103(a) to contest the loan guarantees made by FCMA to the Nguyens because the FCMA and the Nguyens allegedly "falsely certified that Nguyen facilities are 'family farms' as defined by the FSA's regulations" and "the FSA maintains the power to contest, modify, or impose additional conditions upon the loan guarantees." (Resp. p. 9.) This contention underscores the Court's finding that Plaintiff may not bring its claims against the non-federal defendants. Instead, any such claims would have to be made by the FSA against the FCMA and the Nguyens.

Some members and supporters of Concerned Citizens receive their drinking water from ground water wells, while others receive drinking water supplied by public utilities that draw water from area lakes, fed by area streams. Members and supporters of the group fish, swim, and recreate in area lakes and are concerned about the impact that thousands of tons of chicken litter will have on the watersheds of West Tennessee as well as the safety of the fish that they eat and the water that they drink.

….

Members and supporters of Concerned Citizens are directly impacted by the congregating of hundreds of thousands of chickens in their communities, and their ability to lead healthy and peaceful lives is suffering direct harm. Industrial chicken operations create noxious odors and air pollution and clog country roads with huge trucks hauling thousands of chickens, tons of chicken feed, and tons of chicken litter.

Several members and supporters of Concerned Citizens suffer concrete harms as they, their friends, family, and fellow community members with asthma and similar health conditions experience breathing problems as a result of the noxious fumes, feathers, dust and particulate matter associated with industrial scale poultry operations in their communities.

Members and supporters of Concerned Citizens are suffering harm to the value of their homes, farms, businesses and land holdings resulting from unmitigated industrial poultry operations in their communities.

(*Id.* at paras. 190-192, 194-195, 197.) The amended complaint lists Plaintiff's members as Ken Roberts, Brenda Scott, Necothia Anderson, Will Burton, Thomas Gorden, Jackie Washburn, and James Lavel.

An association, such as Plaintiff, has standing to bring suit on behalf of itself or on behalf of its members. That is, an organization can have standing "in its own right" based on injuries that it has suffered, or it can have standing "as a representative of its members" based on injuries that they have suffered. *Harrison v. Spencer*, 449 F. Supp. 3d 594, 601 (E.D. Va. 2020) (citations omitted). *See also Shelby Cty. Advocates for Valid Elections v. Hargett*, 2019 WL 4394754, at *5 (W.D. Tenn. Sept. 13, 2019) ("[A]n organization can assert standing in one or both of two ways: (1) on its own behalf because it has suffered a palpable injury as a result of the defendants' actions

13

('organizational standing'); and (2) as a representative of its members who would have standing to sue individually ('associational standing').") Here, the amended complaint does not allege that the organization itself has experienced any injury. Instead, it alleges associational standing, i.e., standing on behalf of the organization's members.

As this Court previously explained in *Small Sponsors Working Grp. v. Pompeo*, 2020 WL 2561780, at *5 (W.D. Tenn. May 20, 2020),

> An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right (that is, at least one member has suffered an injury fairly traceable to the action of the defendant and such injury will be redressed by a favorable decision), the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *See Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977) (determining that the plaintiff organization's purported members "possess[ed] all of the indicia of membership in an organization" including (a) electing the entity's leadership, (b) serving in the entity's leadership or influencing its direction, and (c) financing the entity's activities, including the costs of the lawsuit.) Plaintiff can only represent the interests of its purported members if it shows it is a bona fide membership organization or that it possesses "indicia of membership." *Id.* at 344.

"[T]he Supreme Court itself has made clear that associational standing need not be confined to formal conceptions of 'membership,' as long as the 'indicia of membership' are present." *Trivette v. Tennessee Dep't of Correction*, 2020 WL 6685557, at *5 (M.D. Tenn. Nov. 12, 2020) (citing *Hunt*).

Accordingly, before the Court can determine if Plaintiff has associational standing, it must determine if Plaintiff is either a "bona fide membership organization" or that it possesses "indicia of membership." *See Carespring Healthcare Mgmt., LLC v. Dungey*, 2018 WL 1138428, at *8 (S.D. Ohio Mar. 2, 2018) (finding a "fundamental flaw" in the nursing home operators claim to associational standing because the plaintiffs were not "associations" and the nursing home residents were not "members" of those associations).

In the present case, Defendants argue that Plaintiff has failed to show that it functions as a traditional membership organization or has indicia of membership if it is, in fact, not a traditional membership organization. Defendants' argument is not persuasive. The Court finds that Plaintiff is a traditional voluntary membership organization with formal members. The organization is incorporated under Tennessee's nonprofit act, and its charter and bylaws set out its membership criteria and processes by which members consensually join the organization. (B. Scott Decl. Exs. 1&2, ECF No. 57-24.) As stated in its charter and bylaws, members vote to elect the Board of Directors, which is the governing body, and directors are subject to removal by a majority member vote. (*Id.*) Moreover, directors owe fiduciary duties of loyalty and good faith to the members and to the corporation, and directors are not paid for their service. (*Id.*) *C.f.*, *Small Sponsors Working Grp.*, 2020 WL 2561780, at *5 (finding that the organization was not a traditional membership group and had no indicia of membership because it was an unincorporated group and had "no board of directors or elected officials," no "written mission statement," and was self-described as a "loose knit association").

Defendants next contend that, even if Plaintiff is a traditional membership organization, Plaintiff cannot demonstrate the basic elements of associational standing in that (1) none of Plaintiff's named members would have standing to sue on their own behalf; (2) Plaintiff's mission is not germane to claims under the Con Act; and (3) Plaintiff's named members would need to participate individually in this litigation because of the particularized nature of their claimed injuries. *See Oak Ridge Env't Peace All. v. Perry*, 412 F. Supp. 3d 786, 831 (E.D. Tenn. 2019) (citations omitted) (summarizing the test for associational standing: "[f]irst, the test requires a court to find the organization's members would 'otherwise have standing to sue in their own right' … Second, the interests the organization seeks to protect are germane to the organization's

purpose. And third, neither the claim asserted nor the relief requested requires the participation of individual members.")  Only the first two prongs of this test are constitutionally mandated while the third requirement is prudential as a matter of "administrative convenience and efficiency." *United Food & Commercial Workers Union Local 751 v. Brown Group*, 517 U.S. 544, 557 (1996).

"[T]o establish the first element of associational standing — that its members have Article III standing in their own right" … "an organization must do more than identify a likelihood that the defendant's conduct will harm an unknown member in light of the organization's extensive size or membership base." *Ass'n of Am. Physicians,* 13 F.4th at 543 (citations omitted). "[T]he organization must instead identify a member who has suffered (or is about to suffer) a concrete and particularized injury from the defendant's conduct. And the organization must show that its requested relief will redress this injury." *Id.* (citations omitted).  Thus, at least one of the named members must show (1) an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the defendant's challenged action rather than the action of a third party; and (3) that it is likely, as opposed to merely speculative, that a favorable judicial decision will prevent or redress the injury. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

Defendants first assert that Plaintiff's members' claims are speculative. They correctly note that the "threatened injury must be certainly impending to constitute injury in fact" and "'[a]llegations of possible future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)); *see also Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 865 (6th Cir. 2020) ("[F]ear of a future harm is not an injury in fact unless the future harm is 'certainly impending.'").

16

Defendants characterize the members' injuries in this case as "subjective concerns about possible future harms." They argue that members Brenda Scott, Thomas Gorden, Jackie Washburn, and James Lavel "all relate their general worry as to possible future environmental and other harms but fail to show that such contingencies are both certainly impending and that they will cause concrete injury." As evidence of this "general worry" about "possible future harms," they point out Ms. Scott's "concern" about water pollution "[i]f chicken litter seeps into the ground water" and her concern about air pollution if increased dust from highly concentrated poultry operations requires her to get allergy shots, (B. Scott Decl. ¶¶ 16, 18, ECF No. 57-24), Thomas Gorden's "concern[] that chicken litter . . . [will] pollute our water supply" (T. Gorden Decl. ¶ 18, ECF No. 57-29), Jackie Washburn's concern "with the air pollution generated by these facilities" (J. Washburn. Decl. ¶ 13, ECF No. 57-30), and James Lavel's concern about "nutrient pollution from industrial chicken facilities." (J. Lavel. Decl. ¶ 9, ECF No. 57-31.)

Plaintiff has countered that "environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000) (citing *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972)). Plaintiff claims that the harms suffered by its members, who live, work, and recreate in the area surrounding the chicken farms, meet that standard. Those harms, according to Plaintiff, include "overwhelming noxious odors, aborted family gatherings, inability to enjoy land and home, loud noises that disturb sleep, swarms of flies that invade neighboring homes, and clouds of poultry dander and feathers that threaten the health of people with asthma," and a decrease in their property values. (Resp. at pp. 27-28 (citing Scott, Roberts, and Gorden Decls., ECF Nos. 57- 24, 57-25, and 57-29.)) The Court finds that these alleged harms are "concrete,

particularized, actual or imminent injuries" for the purpose of showing that Plaintiffs' members have standing.

Next, Defendants argue that there is no connection between the loan guarantees and the alleged harms, i.e., traceability, because Plaintiff's members' alleged injuries arise from the operation of other chicken farms. In support of their argument, they point to statements in the record that indicate that Plaintiff's members have been affected by non-Nguyen chicken farms. For example, Gorden claims that he lives near "a group of eight large-scale industrial chicken houses" but does not state that these "chicken houses" are the same Nguyen farms challenged by Plaintiff. (T. Gorden Decl. ¶ 3, ECF No. 57-29.) Burton claims that he lives near "16 poultry houses on Sullivan Road," which is not the street location of the Nguyen farms. (W. Burton Decl. ¶ 4, ECF No. 57-28). Washburn alleges that she lives in Huron, Tennessee, across from where twenty-four poultry houses were planned, but ultimately not constructed, approximately thirty miles from the Nguyen farms in Cedar Grove. (J. Washburn Decl. ¶¶ 3, 4, 9, ECF No. 57-30.)

While Defendants are correct that harms caused by other chicken farms cannot be traced to FSA's loans, Plaintiff points to evidence in the record that Crystal Roberts lives next door to the Nguyen farms (C. Roberts Decl. ¶ 3, ECF No. 57-26); Anderson lives near the Nguyen farms (Anderson Dec. ¶ 3, ECF No. 57-27); and Scott lives within a few miles, fishes in nearby lakes, and the poultry trucks driving by her house have affected her sleep. (Scott Decl. ¶¶ 8, 12, 15, ECF No. 57-24.) Although Defendants term these examples as "rare exception[s]" (Reply. p. 2, ECF No. 68), the Court finds that the statements of the members in their declarations as to their close proximity to the Nguyen farms are sufficient to meet the traceability element.

As to the final factor when deciding if members have standing in their own right, Plaintiff must show that its members' injuries would be redressed if the requested relief was granted

("redressability"). That is, the members would no longer be subjected to the alleged noxious fumes, pollution, and other environmental harms generated by the Nguyen farms if the requested relief is granted. *See Haaland v. Brackeen,* 599 U.S. 255, 292 (2023) (reiterating that petitioners must show that their injury is "likely" to be "redressed by judicial relief" in order to establish Article III standing; that is, granting the relief sought must "remedy the alleged injury"). Plaintiff must allege facts demonstrating "it is likely, as opposed to merely speculative, that vacatur of the loan guarantee would redress its members' alleged injuries." *Food & Water Watch v. United States Dep't of Agric.*, 1 F.4th 1112, 1117 (D.C. Cir. 2021). In the present case, Plaintiff has failed to show that it can meet this factor.

Defendants characterize the Nguyen farms as independent third parties. *See Bennett v. Donovan*, 703 F.3d 582, 587-88 (D.C. Cir. 2013) (defining an independent third party as a party who is "independent of government policy with respect to the action at issue in a particular case" and who can continue to act in the manner harming the plaintiff regardless of whether the agency action at issue is declared unlawful by a court). Because Plaintiff's members allege injuries that hinge on the actions of third parties, Plaintiff must "adduce facts showing that those [third party] choices have been or will be made in such manner as to produce causation and permit redressability of injury." *Lujan*, 504 U.S. at 562 (citing *Warth*, 422 U.S. at 505); *see also Binno v. Am. Bar Ass'n*, 826 F.3d 338, 345 (6th Cir. 2016) (affirming grant of motion to dismiss because redressability hinged on third-party action); *Food & Water Watch*, 1 F.4th at 1116 ("Although this case involves a procedural injury, namely the Agency's failure to prepare an environmental impact statement, redressability turns not only on the actions of the Agency, but the independent actions of the farmer and lender in seeking a new loan guarantee."). "[T]o establish redressability . . . we require[] that the facts alleged be sufficient to demonstrate a substantial likelihood that the third party directly

injuring the plaintiff would cease doing so as a result of the relief the plaintiff sought." *Renal Physicians Ass'n v. U.S. Dep't of Health & Human Servs.*, 489 F.3d 1267, 1275 (D.C. Cir. 2007).[5] Moreover, "[w]hen a claimant challenges the defendant's actions with respect to third parties . . . it is 'substantially more difficult' to establish standing given the causation and redressability problems that invariably arise." *Arizona v. Biden*, 40 F.4th 375, 383 (6th Cir. 2022).

Here, Plaintiff has asked the Court to (1) order consideration of remedial mitigation measures; (2) vacate the loan guarantees and the environmental assessment underlying them and enjoin spending under the loan guarantees; (3) enjoin the Nguyens' farming operations, and (4) enjoin future subsidies to other "industrial scale poultry facilities."

As for enjoining future subsidies, a request for prospective relief is improper under the APA; instead, the relief sought must be specific to the final agency action challenged, which in this case is the FSA's decision to issue loan guarantees. *See Lujan*, 497 U.S. at 891 ("Under the terms of the APA, respondent must direct its attack against some particular 'agency action' that causes it harm" and "cannot seek wholesale improvement of this program by court decree"). Likewise, the Court cannot order specific "mitigation measures" because the only available relief under section 706(2) of the APA is to "hold unlawful and set aside agency action" - in this case, the loan guarantees. 5 U.S.C. § 706(2); *see e.g., Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d

---

[5] The *Renal Physicians Ass'n* Court described "two categories of cases where standing exists to challenge government action though the direct cause of injury is the action of a third party," 489 F.3d 1276, neither of which is present in this case. "First, standing exists [when] the challenged government action authorized conduct that would otherwise have been illegal." *Id.* "Second, standing has been found '[when] the record presented substantial evidence of a causal relationship between the government policy and the third-party conduct, leaving little doubt as to causation and the likelihood of redress.'" *Id.* (citing *Tozzi v. United States Dep't of Health & Human Servs*, 271 F.3d 301 (D.C. Cir. 2001), in which the Court "found a manufacturer had standing to challenge the government's classification of dioxin as a carcinogen, because there was 'little doubt' the government's authoritative statement would affect demand for the manufacturer's products.")

400, 403 (D.C. Cir. 2005) ("[D]istrict court had no jurisdiction to order specific relief" because the APA allows only vacatur and remand).[6]  *See also Mann Constr., Inc. v. United States*, 27 F.4th 1138, 1143 (6th Cir. 2022) (reaffirming that, under § 706(2) of the APA, the Court is limited to setting aside agency action). Thus, "when a court reviewing agency action determines that an agency made an error of law," the APA provides jurisdiction "only to vacate the Secretary's decision" and "remand for further action consistent" with the opinion.[7] *Palisades*, 426 F.3d at 403; *see also Cnty. of Los Angeles v. Shalala*, 192 F.3d 1005, 1011 (D.C. Cir. 1999) (holding that "it was error" for "the court to retain jurisdiction to devise a specific remedy for the Secretary to follow").

Defendants argue, and the Court agrees, that, even if the Court orders the FSA to undertake additional review, and even if the FSA then concluded based on that additional review that certain other mitigation measures are needed, the FSA cannot require the FCMA to impose new mitigation measures on the already-issued loan guarantees because nothing in the FSA's regulations allow the agency to require the Nguyens to implement mitigation measures identified after the guarantees have been approved.  *See Citizens Alert Regarding the Env't. v. Leavitt*, 355 F. Supp. 2d 366, 370

---

[6]  Defendants correctly state that Plaintiff's reliance on *NAACP v. Kemp*, 721 F. Supp. 361 (D. Mass. 1989), is misplaced because the agency in that case was statutorily authorized to impose obligations after funds were spent. *Kemp*, 721 F. Supp. at 367 (citing 42 U.S.C. § 5304, which requires grantees to "affirmatively further fair housing"). The FSA's authorizing statute does not require lenders to "affirmatively further" environmental protection. Likewise, *Sierra Club v. U.S. Dep't of Agric.*, 777 F. Supp. 2d 44, 53-54 (D.D.C. 2011), is inapposite because "the terms of the loan contract" in that case required future agency action. Here, Plaintiff has cited no contract provision allowing the FSA to unilaterally impose new environmental measures on the Nguyens.
[7] It is not clear whether the Court could order remand without vacutur. *See Ackerman Bros. Farms, LLC v. United States Dep't of Agric.*, 2021 WL 6133910, at *5 (E.D. Mich. Dec. 29, 2021), *appeal dismissed sub nom. Ackerman v. United States Dep't of Agric.*, 2022 WL 2965613 (6th Cir. July 20, 2022) ("Notably, the Sixth Circuit has not expressly approved of remand without vacatur in the APA context. Even so, the great weight of authority favors recognizing the remedy.") However, that issue is not before the Court.

(D.D.C. 2005) (finding no redressability because the EPA's award of a grant to a state entity was "a done deal that may not be revisited"). Once issued, the FSA may rescind the guarantees only if the FCMA committed fraud or misrepresented information, which Plaintiff has not alleged. *See* 7 C.F.R. § 762.103(a).

As for enjoining the operation of the farming operations, Plaintiff has not pointed to any evidence that the guarantees are required for the farms' continued operations. *See Renal Physicians Ass'n*, 489 F.3d at 1278 (observing that an agency action can be "a substantial contributing factor in bringing about a specific harm, but the undoing of the governmental action will not undo the harm, because the new status quo is held in place by other forces."). At this juncture, after the loan funds guaranteed by the FSA have been disbursed and construction has been completed, the Nguyen farms could continue to operate without the loan guarantees. *Cf. Sierra Club v. U.S. Dep't of Agric.*, 2000 WL 1679473, at *3 (6th Cir. Nov. 2, 2000) (holding that "any ruling in the Sierra Club's favor on the issue of whether USDA complied with NEPA would still not afford the Appellants the specific relief requested" because the "poultry processing facility is operational and nearly all of the federal funds for the water treatment plant expansion have already been disbursed").[8]

For these same reasons, Plaintiff's requests for declarations that "the Nguyen poultry facilities" and "industrial poultry facilities affiliated with Tyson" are not "family farms" eligible for loan guarantees under the Farm Ownership Loan program fail to redress Plaintiff's environmental concerns. Moreover, vacating the EA and loan guarantees and enjoining spending will not alleviate Plaintiff's alleged environmental harms because no further agency action is

---

[8] The Sixth Circuit decided this case on the ground of mootness "because no effective remedy can be provided to the Sierra Club," 2000 WL 1679473, at *3; however, the reasoning of the Court is informative on the issue of redressability.

required now that construction is complete. The FSA issued the EA to support the loan guarantees; if the loan guarantees were vacated, the FSA would have no reason to conduct a new EA unless there were new applications for loan guarantees. *See Protect Our Aquifer v. Tennessee Valley Auth.*, 654 F. Supp. 3d 654, 674-75 (W.D. Tenn. 2023) (finding no redressability because "[n]ullifying the allegedly unlawful contractual provisions will mean more of the same. Defendant's requirements contracts with its distributors will continue — so will the Allen Plant's use of Memphis Aquifer water, Kingston Coal Plant's alleged pollution of the Tennessee River, and consideration of the proposed pipeline construction through the Cumberland River. Simply put, even if the Court were to reform the allegedly offending provisions of Defendant's contracts with 143 LPCs — none of whom are parties here — doing so would unlikely cure Plaintiffs' environmental injuries as alleged in their amended complaint.")

Here, Plaintiff cannot "connect the vacatur of the Agency's loan guarantee with any likely change to the farm's operation." *See Food & Water Watch*, 1 F.4th at 1118; *see also Ctr. For Biological Diversity v. Env't Prot. Agency*, 56 F.4th 55, 69 (D.C. Cir. 2022) (explaining that in *Food & Water Watch*, "with the farm already up and running, we held plaintiff could not establish redressability due to the speculative assumption" of reapplication "for a new loan guarantee"). Thus, Plaintiff has failed to meet the redressability factor needed to show standing.

Because Plaintiff has not met all the elements necessary for associational standing as set out in *Hunt v. Washington State Apple Advertising Comm.*, 432 U.S. 333, 341 (1977), *see Belevender v. Magi Enterprises, Inc.*, 2007 WL 671316, at *5 (N.D. Ohio Feb. 28, 2007) (reiterating that, to have associational standing, a plaintiff must show that it meets all of the elements required by *Hunt*); *accord New York State Nurses Ass'n v. Albany Med. Ctr.*, 473 F. Supp. 3d 63, 67 (N.D.N.Y. 2020), the Court need not determine whether Plaintiff's purpose is

germane to claims under the Con Act and whether participation of Plaintiff's individual members in the litigation is required.

In summary, Defendants' motion to dismiss (ECF No. 55) is **DENIED** as moot. Defendants' motions to dismiss (ECF Nos. 60, 61, 62) are **GRANTED**.  The Clerk of the Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date:  January 26, 2024.